# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:15-CR-205-ALM-CAN-1 |
| | § |
| TOMSON XAYASITH (1) | § |
| | § |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is the Government's request for revocation of Defendant Tomson Xayasith's ("Defendant") supervised release. *See* Dkt. 140 (First Amended Petition for Warrant or Summons for Offender Under Supervision). Having reviewed the evidence and applicable authorities, the undersigned recommends the following findings: (1) Defendant committed the state felony offense of continuous family violence; (2) Defendant violated the terms of his supervised release; (3) Defendant's violation is a Grade B violation under the United States Sentencing Guidelines; and (4) Defendant should be committed to the custody of the Federal Bureau of Prisons for an imprisonment term of ten (10) months, to be followed by twenty (20) months of supervised release with the same conditions of release previously imposed.

### I. BACKGROUND

### A. PROCEDURAL HISTORY PRIOR TO FINAL REVOCATION HEARING

On June 29, 2016, Defendant pled guilty to violating 18 U.S.C. §§ 1349 (Conspiracy to Commit Mail Fraud) and 1028(a)(7) (Fraudulent Use of Identification). *See* Dkt. 100. The Court accepted his guilty plea and sentenced Defendant to a term of forty-five (45) months' imprisonment and three (3) years of supervised release. *See* Dkts. 94, 100, 124, 126. Defendant was also sentenced to pay $268,180.90 in restitution and a special assessment of $200. *See* Dkt.

126 at 6. On January 18, 2019, Defendant completed his term of imprisonment and began his term of supervised release. *See* Dkt. 131 at 1.

On March 30, 2021, the United States Probation Office filed a Petition for Warrant or Summons for Offender under Supervision (the "Original Petition") (Dkt. 131), which alleged Defendant violated three conditions of his supervised release. On April 8, 2021, the Court conducted a preliminary hearing and a detention hearing as to the allegations in the Original Petition. *See* Dkt. 138. Upon the hearings' conclusion, the Court determined there was probable cause to support the allegations in the Original Petition and Defendant should be detained pending his final revocation hearing. *See* Dkts. 138, 139.

Prior to the final revocation hearing on the Original Petition, the United States Probation Office filed an Amended Petition for Warrant or Summons for Offender under Supervision (the "Amended Petition") (Dkt. 140), which is the live petition in this matter. The Amended Petition alleges the same violations and underlying events set forth in the Original Petition, as well as an additional violation of Defendant's supervised release. The Amended Petition alleges that Defendant violated the following conditions of release:

1. Defendant shall not commit another federal, state, or local crime;

2. Defendant shall notify his probation officer within seventy-two (72) hours after being arrested or questioned by a law enforcement officer;

3. Defendant shall make partial payments toward the restitution owed, as scheduled and directed by his probation officer; and

4. Defendant shall not incur new credit charges or open additional lines of credit without his probation officer's approval, unless Defendant has paid in full all financial obligations imposed by the Court.

*See* Dkt. 140.

The Amended Petition alleges Defendant violated these conditions because:

1. On January 27, 2021, officers from Rowlett Police Department ("RPD") arrived at Defendant's residence, where they witnessed Defendant arguing with his wife, Morgan Nelson ("Nelson"), in the front yard. *Id.* at 1. Nelson advised the officers the couple was divorcing and that Defendant assaulted her on January 23 and 25, 2021. *Id.* Defendant agreed to leave the residence and no arrest was made. Nelson stated she was unsure whether she wished to press charges. *Id.*

2. On February 8, 2021, RPD officers were dispatched to Defendant and Nelson's residence in response to a family violence call. *Id.* at 1–2. Nelson reported Defendant was on the couch speaking to his brother and began urinating on the couch. *Id.* at 2. Nelson then asked Defendant's brother to pick up Defendant before "issues" arose between Defendant and Nelson. *Id.* Defendant then, allegedly, approached Nelson aggressively and pushed her against the couch. *Id.* Nelson left for the bedroom, and Defendant followed. *Id.* The two argued, poured water on each other, and Nelson left the residence and went to RPD to file a report against Defendant. *Id.*

3. On February 12, 2021, RPD issued a warrant for Defendant's arrest. *Id.* The warrant charged Defendant with a violation of Texas Penal Code § 25.11 (continuous family violence). *Id.* As of the date of this Report and Recommendation, the felony case is pending in state court. *See State of Tex. v. Tomson Xayasith*, No. F-2147737 (195th Dist. Ct., Dal. Cty., Tex. Indictment filed April 22, 2021).

4. Defendant failed to notify his probation officer of his contact with law enforcement. Dkt. 140 at 2.

5. Defendant failed to make his required restitution payments for the months of September, October, and November 2020, and February and March 2021. *Id.*

6. Although Defendant was given approval to open a Capital One credit card, the Probation Officer instructed Defendant to pay the full balance each month to continue using it. *Id.* at 3. Credit card statements show Defendant did not pay the full balance each month from December 2020 to March 2021. *Id.*

On April 27, 2021, the Court held a hearing on the Amended Petition. *See* Dkt. 142. The Court found probable cause to support the allegations in the Amended Petition, ordered Defendant be detained pending his final revocation proceeding, and proceeded directly to a final revocation hearing on the Amended Petition. *See id.*

### B. FINAL REVOCATION

During the final revocation hearing, Detective Chance Fleck ("Detective Fleck") testified there were additional instances of domestic violence committed by Defendant aside from those alleged in the Amended Petition. *See id.* Specifically, Detective Fleck testified that RPD officers were aware that Defendant assaulted Nelson on the following dates: December 26, 2020; January 9, 2021; January 23, 2021; January 27, 2021; and February 8, 2021. *See id.*; *see also* Govt. Exs. 7–11. Photographs of lip and breast injuries sustained by Nelson were admitted into evidence. *See* Govt. Exs. 5–6. After the Government rested its case, Defendant pled true to allegations 2, 3, and 4—failure to notify his probation officer of contact with law enforcement, failure to make partial payments under the restitution plan, and failure to comply with his probation officer's instructions regarding credit lines, respectively—in the Amended Petition. *See* Dkt. 142. The undersigned accepted Defendant's plea as to allegations 2, 3, and 4, and found the Government met its burden to prove allegation 1: that Defendant committed the state felony of continuous family violence. *See id.*

The undersigned determined Defendant's commission of continuous family violence constituted a Grade A violation. *See id.* Pursuant to the United States Sentencing Guidelines (the "Sentencing Guidelines"), Defendant's Grade A violation is subject to a term of imprisonment between twelve (12) and eighteen (18) months. *See* U.S.S.G. §§ 7B1.4. On April 28, 2021, the undersigned recommended that Defendant be sentenced to an imprisonment term of fifteen (15) months, followed by twenty (20) months of supervised release with the same conditions of release as previously imposed. *See* Dkt. 143. Defendant filed Objections (Dkt. 147), wherein he argued that the Court improperly classified Defendant's violation as a Grade A violation and, thus, imposed an improper prison sentence. *See* Dkt. 147.

Shortly thereafter, the United States Supreme Court decided *Borden v. United States*, 141 S. Ct. 1817 (2021). Following *Borden*, Defendant raised new arguments to the District Judge based on *Borden* and another Supreme Court case, *Voisine v. United States*, 136 S. Ct. 2272 (2016). *See* Dkt. 148. In light of Defendant's new arguments, this matter was again referred to the undersigned for further proceedings and recommendations. *See id.* The parties filed supplemental briefing, and the Court heard further argument from the parties. *See* Dkts. 149, 150, 151, 152, 153, 154, 155.

## II. ANALYSIS

The parties do not dispute that Defendant violated his conditions of supervised release, in part, by committing the state felony of continuous family violence. *See* Dkt. 147 at 4; Dkt. 150 at 1. They do, however, dispute whether, in light of *Borden*, this violation is properly classified as a "crime of violence" and, in turn, whether a fifteen (15) month revocation sentence is appropriate. Defendant argues that, under *Borden*, continuous family violence, is not a "crime of violence" because it criminalizes reckless, as well as knowing and intentional, conduct. As a result, Defendant argues the fifteen (15) month revocation sentence exceeds the appropriate sentencing range.

### A. Punishing Violations of Supervised Release

When a defendant violates the terms of his supervised release, the Court must determine whether, based on the seriousness of the defendant's violation, the Court should revoke the defendant's supervised release. *See United States v. Rivera*, 797 F.3d 307, 308 (5th Cir. 2015) (per curiam) (citing U.S.S.G. §§ 7B1.1, 7B1.4). Upon consideration, the Court must classify the defendant's violation as a Grade A, Grade B, or a Grade C violation and sanction the defendant accordingly. *Id.* The Sentencing Guidelines list the grades in descending order of severity, with Grade A being the most severe and Grade C being the least severe. *See id.*; U.S.S.G. § 7B1.1. The

grade of the defendant's most severe violation, combined with the defendant's criminal history category, determines the sentencing range for the defendant's violation. *See Rivera*, 797 F.3d at 308; U.S.S.G. § 7B1.1(b). "The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct." *See* U.S.S.G. 7B1.1 cmt. 1.

A defendant commits a Grade A violation if he commits a federal, state, or local offense: (1) that is punishable by more than one year imprisonment and that (a) is a "crime of violence," (b) is a controlled substance offense, or (c) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 8545(a); or (2) that is punishable by imprisonment of more than twenty years. U.S.S.G. § 7B1.1(a)(1). As is relevant here, a "crime of violence" is defined as an offense that either (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) constitutes murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of certain firearms or explosives within the meaning of the Sentencing Guidelines. *Id.* §§ 7B1.1; 7B1.1 cmt. 2; 4B1.2(a). The first provision, which concerns the actual, attempted, or threatened use of physical force against the person of another, is known as the "elements clause" or the "force clause." *See, e.g.*, *United States v. Smith*, 957 F.3d 590, 593 (5th Cir. 2020); *United States v. Simmons*, 917 F.3d 312, 320 (4th Cir. 2019). The second provision, which lists categories of offenses, is known as the "enumerated offense clause" or "enumerated clause." *See, e.g.*, *United States v. Parker*, 3 F.4th 178, 179 (5th Cir. 2021); *Simmons*, 917 F.3d at 316.

A defendant commits a Grade B violation if the defendant engages in any other conduct that constitutes a federal, state, or local offense punishable by a term of imprisonment of more than

one year. U.S.S.G. § 7B1.1(a)(2). All other violations are Grade C violations. U.S.S.G. § 7B1.1(a)(3).

### B. Punishing Defendant's Violation

Here, the Court finds, by a preponderance of the evidence, that Defendant assaulted his wife on at least two occasions over a twelve-month period. In Texas, Defendant's conduct constitutes the felony offense of continuous family violence, which occurs when a person "intentionally, knowingly, or recklessly" causes bodily injury to a family member, including the person's spouse, two or more times during a twelve-month period. TEX. PENAL CODE §§ 25.11, 22.01. Continuous family violence is a third-degree felony punishable by at least two years imprisonment. *Id.* §§ 25.11(a), 25.11(e), 12.34(a). Because Defendant's conduct is punishable by more than one year imprisonment, Defendant's conduct is a Grade A violation if continuous family violence is a "crime of violence." *See* U.S.S.G. § 7B1.1(a).

### 1. *United States v. Borden* and *Voisine v. United States*

In *Borden*, the United States Supreme Court held that offenses including a *mens rea* of recklessness are not "violent felonies" under the Armed Career Criminal Act ("ACCA"). 141 S. Ct. at 1821–22. Under the ACCA, the term "violent felony" includes any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 1822 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). To determine whether a prior offense is a "violent felony" in the ACCA context, courts look to the full spectrum of acts criminalized by the offense. If any act criminalized by the offense does not involve "the use, attempted use, or threatened use of physical force" against another person, the offense is not a "violent felony." *Id.* This is known as the "categorical approach." *Id.*

Applying the categorical approach, the Supreme Court held in *Borden* that offenses criminalizing reckless conduct "against the person of another" are not "violent felonies." *Id.* at 1821–22. As set forth by the Supreme Court, "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." *Id.* at 1825. Thus, if an offense criminalizes conduct that is reckless, the least culpable acts criminalized by the offense do not involve the actual, attempted, or threatened use of physical force against the person of another. *Id.* at 1822, 1825. Therefore, the offense is not a "violent felony" within the meaning of the ACCA. *Id.*

The Supreme Court contrasted the ACCA definition of "violent felony" with the statute at issue in *Voisine*, an earlier Supreme Court case that specifically considered whether an offense criminalizing reckless conduct is a "misdemeanor crime of domestic violence." *See id.* at 1824–25. The relevant statute in *Voisine* defined "misdemeanor crime of domestic violence" to include offenses that "ha[ve], as an element, the use or attempted use of physical force," but omitted the phrase "against the person of another" that is included in the ACCA definition of "violent felony." *Id.* at 1825. Because the statute in *Voisine* criminalized the use of physical force generally, regardless of whether the physical force is exerted "against the person of another," an offense that criminalizes reckless conduct is a "misdemeanor crime of domestic violence," even though that offense would fail to meet the definition of a "violent felony" under *Borden*. *Id.* Thus, under *Borden* and *Voisine*, an offense that criminalizes reckless conduct generally has as an element, the actual or attempted use of physical force, but does not have as an element, the use of such force against the person of another. *See id.*

As argued by Defendant, the term "crime of violence" is defined by the Sentencing Guidelines to include offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force *against the person of another*." See U.S.S.G. §§ 7B1.1(a)(1); 4B1.2(a)(1) (emphasis added). Because this language is identical to the ACCA definition of "violent felony" addressed in *Borden*, Defendant argues the Court should apply the Supreme Court's reasoning in *Borden* to find that continuous family violence is categorically not a "crime of violence."

Defendant's argument overlooks the fact that *Borden* was decided in the sentencing context under the ACCA, which is distinct from the supervised release context. *See, e.g.*, *United States v. Willis*, 795 F.3d 986, 992 (9th Cir. 2015) (drawing distinctions between sentencing proceedings and revocation proceedings). In sentencing proceedings, to consider whether to apply an enhancement under the ACCA, courts consider the defendant's prior convictions and look only to the elements of those convictions without regard to the actual conduct that resulted in the convictions. *Id.* By contrast, in revocation proceedings, there may not be a conviction for the court to consider. *See Johnson v. United States*, 529 U.S. 694, 700 (2000) (citing 18 U.S.C. § 3583(e)(3)). Instead, courts consider the defendant's conduct that resulted in the supervised release violation, which "need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." *Id.* Any sentence imposed for the defendant's violation is treated "'as part of the penalty for the initial offense,' rather than a penalty for the offense constituting a violation of the terms of supervised release . . . ." *Rivera*, 797 F.3d at 308 (quoting *Johnson*, 529 U.S. at 700). That is, in the revocation context, unlike in the sentencing context, courts punish the violation of the defendant's terms of supervised release and not the defendant's criminal offense. Punishment of the latter must be determined by separate prosecution to avoid issues of double jeopardy. *See Johnson*, 529 U.S. at 700.

Given these distinctions, the Court cannot simply adopt the categorical approach applied in *Borden* to determine whether Defendant violated his conditions of release by committing a "crime of violence." Instead, the Court must look to authority that determines whether, in the supervised release context, Defendant committed a "crime of violence."

### 2. Classifying a Supervised Release Violation as a "Crime of Violence"

The United States Courts of Appeal are split as to whether the categorical approach applies to determine whether a defendant violated his conditions of supervised release by committing a "crime of violence." To the Court's best knowledge, the Fifth Circuit has not decided this issue.

The First, Fourth, and Ninth Circuits employ the same two-step approach where the court first looks to the defendant's conduct to determine whether the defendant committed a federal, state, or local offense. *See United States v. Garcia-Cartagena*, 953 F.3d 14, 21, 24–25 (1st Cir. 2020); *United States v. Doctor*, 958 F.3d 226, 238 (4th Cir. 2020) (noting the lower court evaluates the defendant's conduct based on a specific offense); *Willis*, 795 F.3d at 994. Then, the court applies the categorical approach to the identified offense. *See Garcia-Cartagena*, 953 F.3d at 21, 22–24; *Doctor*, 958 F.3d at 237; *Willis*, 795 F.3d at 994. If the offense can be committed without an element of force, the offense is categorically not a "crime of violence"—even if the defendant's conduct in committing the offense was forceful or violent. *See Garcia-Cartagena*, 953 F.3d at 23 ("[I]f the Sentencing Commission wanted to trigger a Grade A violation whenever the defendant 'used physical force against the person of another' . . . it could have just said that."); *Simmons*, 917 F.3d at 320 ("[W]e ask whether 'the offense's full range of proscribed conduct, including the *least culpable proscribed conduct*,' falls within the conduct proscribed . . . ."); *Willis*, 795 F.3d at 994. This is the same approach the Supreme Court adopted in the context of sentencing proceedings under the ACCA. *See Borden*, 141 S. Ct. at 1822.

The Third, Seventh, and Eight Circuits, by contrast, agree the categorical approach does not apply in the supervised release context. However, these Circuits apply different approaches to determine whether a defendant committed a "crime of violence." In the Seventh and Eighth Circuits, courts look to the defendant's conduct and, without considering the elements of the offense(s) committed by the defendant, determine whether the defendant threatened, attempted, or used physical force against the person of another. If so, the Seventh and Eighth Circuits find the defendant committed a "crime of violence." *See, e.g.*, *United States v. Pitts*, 739 F. App'x 353, 355 (8th Cir. 2018) (The defendant's conduct "involved threatening to rape and kill Baker and her friend. This conduct clearly involves 'the use, attempted use, or threatened use of physical force against the person of another.'"); *United States v. Golden*, 843 F.3d 1162, 1167 (7th Cir. 2016) ("Golden repeatedly punched, kicked, and body slammed Brown. So Golden clearly 'use[d] . . . physical force against the person of another,' and, in doing so, committed a Grade A violation of his supervised release.").

The approach employed by the Seventh and Eight Circuits, however, considers only part of the Sentencing Guideline's definition of "crime of violence," ignoring the predicate phrase "any offense . . . that . . . *has as an element*." *See* U.S.S.G. § 4B1.2(a)(1) (emphasis added) (defining "crime of violence" to include any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). For this reason, the Third Circuit rejects the approach articulated in the Seventh and Eighth Circuits. *See also Garcia-Cartagena*, 953 F.3d at 24 (expressly rejecting the analysis adopted by the Seventh and Eighth Circuits because neither "engaged with the text of § 4B1.2 . . . or explained what work 'as an element' . . . is doing there, if not to invite the same categorical approach the Court has held it commands in the U.S. Code"). According to the Third Circuit, it is "not enough to say that a defendant's actions were

11

simply violent or forcible without pointing to a crime *containing those same elements*." *United States v. Carter*, 730 F.3d 187, 192 (3d Cir. 2013) (emphasis added). Instead—like the First, Fourth, and Ninth Circuits—the Third Circuit requires courts to look to the defendant's conduct to determine if the defendant committed another federal, state, or local crime. *Id.* The offense identified by the court must "contain an element of force" to be classified as a "crime of violence," even if the offense penalizes both violent and non-violent conduct. *See id.* The Third Circuit then looks to the defendant's conduct to determine whether the defendant committed the identified offense by satisfying the requisite element of force. *See id.* at 192–93.

      The Third Circuit's approach varies only slightly from the categorical approach employed by the First, Fourth, and Ninth Circuits. For example, in *United States v. Johnson*, the district court found the defendant committed assault, which under Pennsylvania law, could be committed recklessly, and, therefore, without an element of force. *See* 785 F. App'x 34, 39–40 (3d Cir. 2019). Looking to the defendant's conduct, the district court evaluated the defendant's *mens rea* and found the defendant "committed 'a knowing and intentional assault,' not a reckless one." *Id.* at 40. Therefore, the district court found the defendant committed a "crime of violence," and the Third Circuit upheld the district court's finding. *Id.* Under the categorical approach, this defendant's assault, although committed with the more culpable *mens rea*, would not be a "crime of violence" because the offense also criminalizes lesser, reckless conduct. *See Garcia-Cartagena*, 953 F.3d at 22 ("[I]t's the '*offense under federal or state law*,' and not the defendant's 'conduct,' that must 'ha[ve] as an element' the violent use of force.") (emphasis in original); *Willis*, 795 F.3d at 993 ("[T]he court must determine whether the applicable . . . offense (as opposed to the defendant's conduct that constituted such an offense) is a crime of violence.").

The Court identifies a 4-2 split in authority, wherein a majority of the identified Circuits require courts to determine what offense, if any, the defendant committed and then look to its elements to determine whether the offense "has as an element" the actual, attempted, or threatened use of force. In light of this majority approach, the Court recommends the District Judge, in classifying Defendant's violation, look first to Defendant's conduct to determine what offense, if any, Defendant committed. Then, based on the offense(s) identified, determine whether Defendant committed a "crime of violence." For this second step, the Court recommends the District Judge employ the categorical approach adopted by the First, Fourth, and Ninth Circuits.

As set forth by the First Circuit, employing the categorical approach in this two-step analysis not only comports with the plain language of the Sentencing Guidelines, but also "jibes with Application Note 1," which requires courts to consider the defendant's conduct that constitutes the violation. *Garcia-Cartagena*, 953 F.3d at 24. Under the Sentencing Guidelines, it is the offense itself, and not the defendant's conduct, that must be classified as a "crime of violence." *Id.* at 22. The plain text of § 4B1.2(a) "directs us to 'the elements of the offense, rather than the [defendant's] conduct'" to define a "crime of violence." *Id.* at 22 (quoting *United States v. Ellison*, 866 F.3d 32, 35 (1st Cir. 2017)). Thus, to determine whether an offense is a "crime of violence," courts look only to "the 'constituent parts' of [the] crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting *Element*, *Black's Law Dictionary* (10th ed. 2014)). If the offense has as an element the actual, attempted, or threatened use of force, then the offense itself is a "crime of violence." *See* U.S.S.G. § 4B1.2; *Garcia-Cartagena*, 953 F.3d at 21–24; *Willis*, 795 F.3d at 994.

If the offense is a "crime of violence," Application Note 1 to § 7B1.1 comes into play. *See Garcia-Cartagena*, 953 F.3d at 24. The Court then looks to "'the defendant's actual conduct' to

13

determine (by a preponderance of the evidence) whether that 'conduct constituted' (that is, whether he committed)" the offense that is a "crime of violence." *Id.* (citing *Carter*, 730 F.3d at 192; *Willis*, 795 F.3d at 992–94 ). That is, Application Note 1 instructs courts to look beyond the charged offense(s), if any, to evaluate whether the defendant's conduct constituted an offense that is categorically a "crime of violence." *See id.*; U.S.S.G. § 7B1.1 cmt. 1. To interpret Application Note 1 any other way would contravene the plain text of § 4B1.2(a), which requires the Court to examine the elements of the offense. *See Garcia-Cartagena*, 953 F.3d at 23. "[I]f the Sentencing Commission wanted to trigger a Grade A violation whenever the defendant 'used physical force against the person of another' . . . it could have just said that." *Id.*

Applying the categorical approach also comports with the policy behind sanctioning violations of supervised release. As set forth by the United States Supreme Court, the aim is to punish the defendant's violation of his conditions of release—not the offense committed by the defendant. *See Johnson*, 529 U.S. at 700; *see also Rivera*, 797 F.3d at 307–09. That is, in the supervised release context, the Court considers the seriousness of the offense—not the seriousness of the defendant's conduct—to grade the violation and then determine the appropriate sanction for the violation, not the offense. *See Rivera*, 797 F.3d at 307–08.

### 3. Classifying Defendant's Violation

Applying the recommended two-step analysis, Defendant committed a Grade B violation. Looking to Defendant's conduct, the Court finds by a preponderance of the evidence that Defendant violated the conditions of his supervised release by committing continuous family violence, an offense punishable by more than one year imprisonment. Continuous family violence, therefore, is a Grade A violation if it is a "crime of violence"; it is a Grade B violation if it is not.

Applying the categorical approach, the Court finds continuous family violence is not a "crime of violence" because it can be committed recklessly and, thus, without an element of force. *See* TEX. PENAL CODE §§ 25.11, 22.01 (criminalizing family violence committed "intentionally, knowingly, or recklessly"). As a result, Defendant committed a Grade B violation.

### 4. Sentencing Defendant's Violation

"Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release." U.S.S.G. § 7B1.3. In such cases the applicable range of imprisonment is determined by looking to the grade of the defendant's violation, as well as the defendant's criminal history category as it was determined when the defendant was originally sentenced to supervised release. U.S.S.G. §§ 7B1.3(b); 7B1.4(a); 7B1.4 cmt. 1. In crafting an appropriate sentence, the Court shall consider the factors enumerated in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the available sentencing range; and any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. § 3553(a). As stated, the primary sentencing goal is to punish the defendant for violating the conditions of his supervised release. *See Johnson*, 529 U.S. at 700; *Rivera*, 797 F.3d at 307–09.

In this case, Defendant committed a Grade B violation, and he is subject to a Criminal History Category 1. Under the Sentencing Guidelines, the appropriate term of imprisonment is four (4) to ten (10) months. U.S.S.G. § 7B1.4(a). Having considered the § 3553(a) factors, the Court recommends a term of imprisonment of ten (10) months followed by an additional term of twenty (20) months of supervised release. *See id.* §§ 7B1.4(a), 7B1.3(g)(2).

### III. RECOMMENDATION

Pursuant to the Sentencing Reform Act of 1984, and having considered the arguments and evidence presented at the April 27, 2021 hearing, the Court recommends that Defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of ten (10) months, followed by twenty (20) months of supervised release with the same conditions of release previously imposed.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 28th day of December, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE