# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:15-CR-205-ALM-CAN-1 |
| § | |
| TOMSON XAYASITH § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On December 28, 2021, the Magistrate Judge entered proposed findings of fact and recommendations (the "Report") (Dkt. #161) that Defendant Tomson Xayasith ("Defendant Xayasith") be committed to the custody of the Bureau of Prisons to be imprisoned for a term of ten (10) months, followed by twenty (20) months of supervised release with the same conditions of release previously imposed. On January 13, 2022, the Government filed Objections (the "Objections") (Dkt. #164) to the Report. Defendant Xayasith did not file a response to the Objections. The Court has considered the arguments and applicable authorities and finds that the Government's Objections (Dkt. #164) are **OVERRULED** and the Magistrate Judge's Report is **ADOPTED** as the opinion of the Court.

The Court expands on the Magistrate Judge's Report to discuss three recently decided Fifth Circuit opinions and emphasize why these cases do not fully resolve Defendant Xayasith's case. *See United States v. Greer*, 20 F.4th 1071 (5th Cir. 2021); *United States v. Williams*, 2022 WL 71826 (Jan. 7, 2022 5th Cir.); *United States v. Gomez Gomez*, 23 F.4th 575 (5th Cir. 2022). In these cases the Fifth Circuit considered whether, in light of *Borden v. United States*, —— U.S.

——, 141 S. Ct. 1817 (2021), the defendants were sentenced based on predicate offenses that the respective district courts had improperly considered "crimes of violence." *Gomez Gomez*, 23 F.4th at *1. The Fifth Circuit found that, under the sentencing guidelines definition § 4B1.2(a)(1), a "crime of violence" categorically excludes crimes that can be committed with a recklessness *mens rea*. *Id.* While these holdings clarified this point as it pertains to sentencing under the guidelines, they did not clarify how, if at all, the analysis changes in a revocation context.

Background is necessary. In June 2021, the Supreme Court decided *Borden v. United States*, 141 S. Ct. 1817. There it held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under" the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because "[t]hey do not require, as ACCA does, the active employment of force against another person." 141 S. Ct. at 1834. "ACCA enhances the sentence of anyone convicted under 18 U.S.C. § 922(g) of being a felon in possession of a firearm if he has three or more prior convictions (whether state or federal) for a 'violent felony.'" *Id.* at 1822 (quoting ACCA). At issue was the term "violent felony" because it includes an "elements clause"—that is, under ACCA, "[a]n offense qualifies as a violent felony . . . if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* (quoting § 924(e)(2)(B)(i)).

"To decide whether an offense satisfies the elements clause, courts use the categorical approach," which is "applicable in several statutory contexts," and renders "the facts of a given case [] irrelevant." *Id.* (citing *Stokeling v. United States*, 139 S. Ct. 544, 555 (2019)). Under the categorical approach, courts look to the predicate crime and determine whether that crime can be committed with a less culpable *mens rea* than that required by the elements clause in the

enhancement statute. *See id.* If it can—and the elements clause requires a more culpable mental state—then the predicate crime is categorically excluded from the definition in the enhancement statute. *Id.* at 1822–25.

In *Borden*, the Supreme Court found that the elements clause in ACCA, which defines "violent felonies," requires a mental state of at least knowledge. *Id.* at 1834. If a predicate crime can be committed with mere recklessness or negligence, it isn't a violent felony, and, therefore, ACCA's enhancement would not apply. *Id.* If, after *Borden*, there was still a question as to whether a "crime of violence" under the sentencing guidelines—as opposed to "violent felony" in ACCA—categorically excluded a recklessness *mens rea*, the Fifth Circuit has since answered it.

In *Greer*, the Fifth Circuit considered whether a defendant received the proper sentencing enhancement under U.S.S.G. § 2K2.1(a)(1), which applies a higher base level "if the defendant has two qualifying felony convictions of crimes of violence." *Id.* at 1074. The sentencing guidelines define "crime of violence" as a federal or state offense punishable by more than a year in prison that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is an enumerated offense. § 4B1.2(a). The elements clause in this section is identical to that in ACCA—which, recall, the Supreme Court said categorically excludes predicate offenses that can be committed with a recklessness *mens rea*. The Fifth Circuit, therefore, looked to the predicate offenses of which the defendant had been previously convicted. Both offenses could be committed by an actor who "intentionally, knowingly, or recklessly caus[es] bodily injury to another, including their spouse." *Greer*, 20 F.4th at 1074. Because the offenses included a recklessness *mens rea*, the Fifth Circuit found they are not crimes of violence under the sentencing guidelines. *Id.* at 1075. The Fifth Circuit applied this

reasoning in both *United States v. Williams*, 2022 WL 71826 and *Gomez Gomez*, 23 F.4th 575, which also dealt with "crimes of violence," as defined in § 4B1.2 of the sentencing guidelines.

In the present case, the Magistrate Judge faced a related, yet distinct, issue. Defendant Xayasith had already served his sentence, and the Court had placed him on supervised release when he engaged in the criminal conduct at issue here. Accordingly, the Magistrate Judge considered whether he had violated his supervised release under U.S.S.G. § 7B1.1.

Violations of supervised release range from Grade A to Grade C, with Grade A being the most severe. A defendant commits a Grade A violation if he engages in "conduct constituting [] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [] is a crime of violence" or an enumerated offense." U.S.S.G. § 7B1.1(a)(1). A defendant commits a Grade B violation if the defendant engages in any other conduct that constitutes a federal, state, or local offense punishable by a term of imprisonment of more than one year. U.S.S.G. § 7B1.1(a)(2). All other violations are Grade C violations. U.S.S.G. § 7B1.1(a)(3). Notably, like the provisions of the sentencing guidelines at issue in *Greer*, *Williams*, and *Gomez Gomez*, § 7B1.1(a)(1) cross references to § 4B1.2 to define "crime of violence." As the Fifth Circuit has now articulated, the term crime of violence, as defined in § 4B1.2, requires a sentencing court to look at the predicate offense and determine whether it can be committed with a recklessness *mens rea*. If it can be, it categorically cannot constitute a crime of violence.

But, as the Report identifies, the Fifth Circuit has not articulated how this analysis might differ in the revocation context. The Report discusses the key distinction between the sentencing and revocation contexts:

> In sentencing proceedings, to consider whether to apply an enhancement under the ACCA, courts consider the defendant's prior convictions and look only to the

4

> elements of those convictions without regard to the actual conduct that resulted in the convictions. By contrast, in revocation proceedings, there may not be a conviction for the court to consider. *See Johnson v. United States*, 529 U.S. 694, 700 (2000) (citing 18 U.S.C. § 3583(e)(3)). Instead, courts consider the defendant's conduct that resulted in the supervised release violation, which "need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." *Id.* Any sentence imposed for the defendant's violation is treated "as part of the penalty for the initial offense" rather than a penalty for the offense constituting a violation of the terms of supervised release. *Johnson*, 529 U.S. at 700. That is, in the revocation context, unlike in the sentencing context, courts punish the violation of the defendant's terms of supervised release and not the defendant's criminal offense.

(Dkt. #161) (some internal citations omitted). Further, comment 1 to § 7B1.1 specifically indicates "[t]he grade of [a supervised release] violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding" but instead is "based on the defendant's actual conduct." These distinctions necessitated the Magistrate Judge's tread into the circuit split waters on this precise issue.

The Court agrees with the Magistrate Judge's circuit split analysis and adopts the Report's recommendation of the two-step approach employed by the First, Fourth, and Ninth Circuits (Dkt. #161 at p. 13). The Court rejects the approach taken by the Second, Seventh, and Eighth Circuits because such approach is at odds with the text of the sentencing guidelines. *See Garcia-Cartagena*, 953 F.3d at 24 ("None of them engaged with the text of §4B1.2 (only *Cawley* even quoted it) or explained what work "as an element" (not to mention "prohibits") is doing there, if not to invite the same categorical approach the Court has held it commands in the U.S. Code."). Applying the two-step analysis, the Court will, therefore, first "determine what offense, if any, the defendant committed and then look to its elements to determine whether the offense 'has as an element' the actual, attempted, or threatened use of force"—or, in other words, is a "crime of violence" (Dkt. #161 at p. 13).

Under step one, the Magistrate Judge found by a preponderance of the evidence that

Defendant Xayasith's actual conduct constituted the offense of Continuous Family Violence. Applying step two, the Magistrate Judge then looked to the elements of the offense, which indicate that a defendant commits Continuous Family Violence if he "intentionally, knowingly, or recklessly causes bodily injury" to a family member, including the person's spouse, at least twice within a twelve-month period. TEX. PEN. CODE §§ 25.11(a), 22.01(a)(1). Like the predicate offenses in *Greer, Wilson*, and *Gomez Gomez*, the predicate offense in this case can be committed recklessly. And the Fifth Circuit has now clearly articulated that an offense is not a "crime of violence" under the sentencing guidelines if it can be committed recklessly. *See* 23 F.4th at *2.

It is, therefore, **ORDERED** that Plaintiff's Objections (Dkt. #164) are **OVERRULED** and the Magistrate Judge's Report (Dkt. #161) is **ADOPTED** as the opinion of the Court.

It is further **ORDERED** that Defendant's supervised release is hereby **REVOKED**. It is further **ORDERED** that Defendant be committed to the custody of the Bureau of Prisons for a term of ten (10) months' imprisonment, followed by twenty (20) months of supervised release with the same conditions of release previously imposed.

**IT IS SO ORDERED.**
SIGNED this 9th day of February, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE